**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 10, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOE ANTHONY REZA, a/k/a JOE
REZA,

Defendant-Appellant.

No. 07-2232

(D. New Mexico)

(D.C. No. CR-06-2603 RB)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, Chief Judge, **TYMKOVICH**, Circuit Judge, and **LEONARD**,
District Judge.[**]

After the district court denied his motion to suppress, the defendant Joe

Anthony Reza entered a conditional guilty plea to being a felon in possession of a

firearm and a felon in possession of ammunition, in violation of 18 U.S.C. §§

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The Honorable Timothy D. Leonard, United States District Judge for the
Western District of Oklahoma, sitting by designation.

922(g)(1) and 924(e)(1). The district court sentenced him to 41-months' imprisonment.

Mr. Reza now appeals, contending that the search warrant for the Artesia, New Mexico residence that he shared with his mother was not supported by probable cause and that the good faith exception to the exclusionary rule established by *United States v. Leon*, 468 U.S. 897 (1984), is inapplicable. As no novel issues are involved here, we bypass the probable cause issue and conclude that the good-faith exception does apply. We therefore affirm the district court's denial of Mr. Reza's motion to suppress.

## I. BACKGROUND

On May 24, 2006, probation and parole officers in Artesia, New Mexico, attempted to visit Mr. Reza at an apartment on 10th Street that he had listed as his residence. At the time, Mr. Reza was on probation for another felony. After the officers discovered that Mr. Reza no longer lived at the 10th Street apartment, agents from the Pecos Valley Drug Task force went to Mr. Reza's mother's home, located at 301 Paris Street, where Mr. Reza had also been reported to reside. The agents found a camp trailer on the south side of the residence and knocked on its door. A man named Jesse Perez answered, and the agents smelled burning marijuana coming from inside the trailer. Mr. Perez admitted that there was marijuana there. The agents proceeded to conduct a protective sweep of the trailer and discovered a rifle.

The agents then knocked on the door of the main residence. They saw someone looking outside, but no one answered the door. Mr. Reza's mother, Dora Perez, then arrived, and she told the agents that Mr. Reza had called her from inside the residence and reported that they were outside. A short time later, Mr. Reza opened the door.

After the agents conducted a protective sweep of the residence, they applied for a search warrant. The affidavit in support of the warrant summarized the agents' efforts to find Mr. Reza, noted the evidence that marijuana was present in the camper trailer, and reported that informants had stated that Mr. Reza had been selling methamphetamine and cocaine and trading drugs for firearms:

> Within the past 30 days, agents from the Pecos Valley Drug Task force have received information from credible and reliable informants of Joe Reza selling both methamphetamine and crack cocaine from inside the residence of 301 Paris. Information was also received that Reza will trade these drugs for firearms and is also in possession of a semi-automatic handgun. Within the past 72 hours, agents received information from a confidential informant that Reza is in possession of large quantities of methamphetamine, crack cocaine, and numerous handguns. During a recent interview with investigators from the Eddy County Sheriff's Department, Pedro Zarazua stated that he has traded several firearms to Reza at this residence.

Rec. vol. I, doc. 21, Ex. 1, attach. C. The agents requested permission to search for "[a]ny and all controlled substances such as but not limited to marijuana,

cocaine, and methamphetamine," as well as drug paraphernalia and documents related to the manufacture and distribution of illegal drugs. *Id.* attach. B.

Based on that affidavit, an Eddy County Magistrate issued a search warrant for the 301 Paris residence and all its curtilage and outbuildings, including the camp trailer. The agents conducted a search and discovered five firearms, drug paraphernalia, marijuana, police body armor, assorted ammunition, and a scanner.

A federal grand jury indicted Mr. Reza on weapons and ammunition charges. He then moved to suppress the evidence discovered during the search, arguing that the warrant was not supported by probable cause and that the *Leon* good-faith exception was inapplicable. According to Mr. Reza, the affidavit accompanying the application for the warrant contained neither (a) specific factual statements that would allow the magistrate to form his own conclusion about the reliability of the informants; nor (b) any indication of independent corroboration of the informants' allegations.

Although the district court denied the motion to suppress, it thought that Mr. Reza had made a colorable argument. It noted that, although the affidavit reported that the unnamed informants were "credible and reliable," *id.* attach. C, the affidavit contained no facts to support that statement. Although the affidavit did provide the name of another informant, it included no information as to his reliability either.

-4-

Nevertheless, the district court concluded that the affidavit established probable cause to search the Paris Street property. It reasoned that some of the informants' allegations about drug dealing and firearms were corroborated by the agents and that the issuing magistrate judge had reasonably relied on this corroboration in issuing the warrant. In the alternative, the district court held, the evidence discovered in the residence was admissible under the good-faith exception to the exclusionary rule.

## II. DISCUSSION

On appeal, Mr. Reza argues that the search of the Paris Street residence violated the Fourth Amendment requirement that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. He also challenges the district court's alternative conclusion that, even if the warrant was not supported by probable cause, the evidence obtained during the search was admissible under the good-faith exception to the exclusionary rule. *See Leon*, 468 U.S. at 919-922.

When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government and uphold the district court's factual findings unless clearly erroneous. *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000). We review the district court's conclusions of law de novo, including its determination that the *Leon* good-faith exception applies. *Id.*

We "have the discretion to proceed directly to an analysis of the good-faith exception without first addressing the underlying Fourth Amendment question." *Danhauer*, 229 F.3d at 1005; *see also United States v. Bishop,* 890 F.2d 212, 216 (10th Cir. 1989) ("[R]esolution of whether there was probable cause supporting the warrant is not necessary to our decision . . . because . . . the agents' conduct clearly falls within the 'good faith exception' to the exclusionary rule."), *United States v. Cook*, 854 F.2d 371, 372 (10th Cir. 1988) ("Assuming but not holding that the affidavit fails to establish probable cause, we believe the district court erred in refusing to apply the good faith exception to the exclusionary rule as set forth in *Leon*."). Because this case does not require us to resolve a "novel question of law . . . [that] is necessary to guide future action by law enforcement officers and magistrates[,]" we proceed directly to the good faith issue here. *United States v. Craig*, 861 F.2d 818, 820-21(5th Cir. 1988) (quoting *Illinois v. Gates*, 462 U.S. 213, 264 (1983) (White, J., concurring in the judgment)). However, we recognize that some discussion of general Fourth Amendment principles is necessary to decide whether the good-faith exception applies.

**A. Under *Leon*, evidence should not be suppressed if police officers reasonably relied upon a facially valid warrant to obtain it.**

The Supreme Court has created an exclusionary rule that, when applicable, forbids the use at trial of evidence obtained in violation of the Fourth Amendment. *Herring v. United States*, 129 S. Ct. 695, 699 (2009). "[T]his

judicially created exclusionary rule is 'designed to safeguard Fourth Amendment rights generally through its deterrent effect.'" *Id.* (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)).

Nevertheless, there are important principles that limit the rule's application. *Id.* at 700. The rule applies only when it "results in appreciable deterrence" and when "the benefits of deterrence . . . outweigh the costs." *Id.* (internal quotation marks and citations omitted). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it and sufficiently culpable that such deterrence is worth the price paid by the judicial system." *Id.* at 702. Those principles are reflected in *Leon,* the decision that establishes the exception at issue here.

In *Leon*, the Supreme Court held that evidence seized pursuant to a facially valid warrant should not be suppressed if police were acting "with an objective good-faith belief that the warrant was properly issued by a neutral magistrate. *Danhaue*r, 229 F.3d at 1006 (discussing *Leon*). *Leon* creates a presumption that, when an officer relies upon a warrant, the officer is acting in an objectively reasonable manner. *United States v. McKneely*, 6 F.3d 1447, 1454 (10th Cir. 1993). This presumption, though not absolute, has considerable heft. *Id.* (*citing United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985)). Thus, "searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law

enforcement officer has acted in good faith in conducting the search." *Leon*, 468 U.S. at 922 (internal citations and quotation marks omitted).

When reviewing an officer's reliance upon a warrant, we must determine whether the underlying documents are devoid of factual support, not merely whether the facts they contain are legally sufficient. *Cardall*, 773 F.2d at 1133 Thus, [i]t is only when [an officer's] reliance was wholly unwarranted that good faith is absent." *Id.* The inquiry "is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. A court should evaluate all attendant circumstances and assume that the executing officers have "a reasonable knowledge of what the law prohibits." *Id.* at 919 n.20.

Nevertheless, the *Leon* good-faith exception does not apply when: (1) the magistrate judge issuing the warrant was misled by a deliberately or recklessly false affidavit; (2) the magistrate judge wholly abandoned his or her detached and neutral judicial role; (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant was so facially deficient . . . that the executing officers cannot reasonably presume it to be valid. *Leon*, 468 U.S. at 923. In such instances, "a reasonably well trained officer would have known that the search was illegal[,]" *Herring*, 129 S. Ct. at 703 (internal citations and quotation marks

omitted), and, as a result, suppression of the unlawfully obtained evidence remains an appropriate remedy. *See United States v. Rowland*, 145 F.3d 1194, 1215-16 (10th Cir. 1998) (discussing these limitations to the *Leon* good-faith exception).

**B. Contrary to Mr. Reza's arguments, the agents reasonably believed that the warrant for the Paris Street property was supported by probable cause.**

In challenging the district court's ruling, Mr. Reza invokes the second and third of these exceptions to the *Leon* rule. He contends that "the issuing judge wholly abandoned his judicial role and failed to perform his neutral and detached role, and the affidavit issued to support the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Aplt's Br. at 25. He observes that the affidavit in support of the search warrant failed to include any specific information to support the general allegations that the unnamed informants and the named informant (Pedro Zarazua) were reliable. Moreover, in his view, the agents failed to sufficiently corroborate the informants' allegations that Mr. Reza was selling methamphetamine and cocaine and trading drugs for firearms.

With regard to the reliability of the informants, we agree with the district court that the search warrant affidavit contains significant deficiencies. Statements regarding an informant's veracity and basis of knowledge are an important part of the totality of circumstances that a judicial officer must consider in determining whether there is probable cause, *i.e.*, "a fair probability that

-9-

contraband or evidence of a crime will be found in a particular place." *United States v. Sells*, 463 F.3d 1148, 1154 (10th Cir. 2006). When an affidavit "leaves the nature of [the informant's past] performance undisclosed . . . the judicial officer making the probable cause determination has no basis for judging whether the [affiant's] characterization of [the informant's past] performance is justified." *United States v. Foree*, 43 F.3d 1572, 1576 (11th Cir. 1995) (quoting 1 Wayne R. LaFave, *Search and Seizure* § 3.3(b) at 636 (2d ed.1987)). As a result, "[m]any courts have properly held that a bare assertion that an informant has provided reliable information in the past carries little or no weight in the probable cause determination." *United States v. Bynum*, 293 F.3d 192, 203 (4th Cir. 2002) (Michael, J., dissenting) (citing *United States v. Brack*, 188 F.3d 748, 755 (7th Cir. 1999) and *Foree*, 43 F.3d at 1575-76); *see generally Illinois v. Gates,* 462 U.S. 213, 239 (1983) (explaining that "an officer's statement that 'affiants have received reliable information from a credible person and believe that heroin is stored in a home,'" is insufficient to establish probable cause because it "is a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause" and because "[the issuing judge's] action cannot be a mere ratification of the bare conclusions of others") (citation omitted).

Here, as the district court observed, the affidavit in support of the search warrant for the Paris Street residence failed to explain the basis for its conclusion

that the informants were reliable and omitted other important details of the investigation. *See* Rec. vol. I doc. 28, at 4 (observing that (1) "[a]lthough the informants who gave information about Mr. Reza selling methamphetamine and crack cocaine from 301 Paris within the prior 30 days were described as 'credible and reliable,' the affidavit contains no facts to support this conclusion[;]" (2) "[t]he use of the passive voice gives no clue as to the source of the information concerning trades of drugs for firearms and possession of a semi-automatic handgun[;]" (3) "[t]he affidavit contains no statements concerning the reliability or credibility of the 'confidential informant' who informed agents that Mr. Reza possessed large quantities of methamphetamine, crack cocaine, and numerous handguns within the prior 72 hours[;]" and that (4) "[a]lthough Pedro Zarazua is named, the affidavit includes no information as to his reliability"). Thus, the issuing judge could not make an independent determination "whether the [affiant's] characterization of [the informant's past] performance [was] justified." *Foree*, 43 F.3d at 1576 (internal quotation marks and citation omitted).

Nevertheless, "the absence of information establishing the informant's reliability or basis of knowledge does not necessarily preclude an officer from manifesting a reasonable belief that the warrant was properly issued." *Danhauer*, 229 F.3d at 1007; *Bishop*, 890 F.2d at 217 (holding that reliance on an informant of unproven reliability does not preclude a finding of the agents' good faith).

-11-

Particularly when the officer takes steps to investigate the informant's allegations, his reliance on the warrant may be reasonable. *Danhauer*, 229 F.3d at 1007.

For example, in *Danhauer*, a detective received information from an unnamed informant that the defendants were manufacturing methamphetamine at their residence. The detective researched the defendants' criminal histories and learned through a probation report that one of the defendants had submitted a urinalysis the day before the warrant application that tested positive for methamphetamine and opiates. We concluded that the affidavit failed to establish probable cause: it did not reveal the informant's basis of knowledge and did not adequately corroborate the informant's allegations. Moreover, the detective made "little attempt to link the methamphetamine to the [defendants'] residence." *Id.* at 1006.

Nevertheless, in our view, the detective's affidavit "was not so lacking in indicia of probable cause that the executing officer should have known the search was illegal despite the state magistrate's authorization." *Id.* His affidavit "contain[ed] more than conclusory statements based on the informant's allegation about criminal activity at [the defendants'] residence." *Id.* Accordingly, the evidence was admissible under the good-faith exception.

This case resembles *Danhauer*. Several factors indicate that the officers reasonably believed that the warrant was properly issued.

First, there was more than one informant. *See* Rec. vol. I, doc. 21, Ex. C. (Affidavit for Search Warrant reporting information from (a) "credible and reliable informant*s*[,]" (b) "a confidential informant[,]" and (c) "Pedro Zarazua") (emphasis added). Although the sheer number of informants is not dispositive, the fact that the agents reported similar allegations against Mr. Reza from different sources supports the government's contention that they reasonably believed that probable cause existed. *See United States v. Mathis*, 357 F.3d 1200, 1206 (10th Cir. 2004) (affirming the district court's finding of probable cause based in part on the fact that "the information provided by the informants was internally corroborated in several respects"); *United States v. Spry*, 190 F.3d 829, 836 (7th Cir. 1999) (concluding that the district court's finding of probable cause was supported in part by the fact that "multiple confidential informants provided corroborating information"); *United States v. Ellison*, 793 F.2d 942, 946-47 (8th Cir. 1986) (concluding that probable cause was supported in part by the consistency of the statements of seven informants who had first-hand knowledge but were *not* described as "reliable and credible" in the search warrant application).

Second, one of the informants, Mr. Zarazua, was named in the affidavit. *See United States v. Brown,* 496 F.3d 1070, 1074-75 (10th Cir. 2007) (stating that "where informants are known . . . , a lesser degree of corroboration is required) (internal quotation marks, citation, and alterations omitted); *United States v.*

-13-

*Jenkins*, 313 F.3d 549, 556 (10th Cir. 2002) (observing that, in contrast to the anonymous informants in other cases, "the informant in this case risked his anonymity by repeatedly meeting with or talking to the police" and that this fact supported the judge's finding of probable cause). Again, although it is not dispositive, the fact that the finding of probable cause was not based solely upon the allegations of "a never-known, never-verified tipster" is significant. *See Bynum*, 293 F.3d at 196, 197 (observing that "[a]lthough certainly it would have been preferable if [a law enforcement agent] had expressly stated in his affidavit the basis for his statement as to his informant's reliability, he did at least swear to the magistrate that he was relying on a known and proven confidential source" and that a warrant based upon information from a known informant was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable") (internal quotation marks and citation omitted).

In addition, even though the agents investigating Mr. Reza did not corroborate the informants' allegations that he was selling methamphetamine and trading drugs for firearms, they did discover an illegal drug on the property—the marijuana in the camper trailer—before they applied for a warrant. Some courts have applied the *Leon* good-faith exception when drugs have been discovered near a residence but when officers have then relied upon a warrant to search the residence itself. *See, e.g., United States v. Carpenter*, 360 F.3d 591, 593, 596 (6th Cir. 2004) (en banc) (applying the good-faith exception when a warrant

application stated that "marijuana was growing *'near'* a residence and there '[was] a road connecting' the residence and the marijuana plants") (emphasis added); *cf. United States v. Bennett*, 170 F.3d 632, 638-39 (6th Cir. 1999) (holding that probable cause to search a residence also established probable cause to search a shop building because "the shop building and the residence are located on the same piece of real property and are in close proximity to each other"); *United States v. Roberts*, 747 F.2d 537, 545 (9th Cir. 1984) (holding that because the defendant was in control of the entire premises, probable cause to search a garage established probable cause to search a house). This case law also supports the agents' reliance on the warrant.

Finally, in our view, application of the exclusionary rule to the facts at hand would not result in "appreciable deterrence" of police misconduct. *Herring*, 129 S. Ct. at 700 (quoting *Leon*, 468 U.S. at 909). After receiving allegations about illegal activities from multiple informants and observing marijuana use on the same real property where they discovered Mr. Reza, the agents presented this information to a judicial officer. We see no indication that the Eddy County Magistrate abandoned his neutral role. Instead, in a close case, he made a decision that probable cause existed.

## III. CONCLUSION

Because the agents reasonably relied upon a facially valid warrant to search the Paris Street property, the good-faith exception to the exclusionary rule

-15-

applies.  We therefore AFFIRM the district court's decision denying Mr. Reza's motion to suppress.

Entered for the Court,


Robert H. Henry
United States Circuit Judge