**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 2, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JIMMY COMER,

Defendant - Appellant.

No. 13-6013
(D.C. No. 5:12-CR-00056-C-1)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.

Jimmy Comer filed two pretrial motions to suppress evidence the police found during a search of his home, which the district court denied. Comer contends the search warrant was not supported by probable cause and that the affidavit in support of the warrant intentionally or recklessly omitted material information that would undermine probable cause. Because we find the good

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

faith exception applies even if probable cause is lacking, we AFFIRM the district court's decision not to suppress the evidence.

# I. Background

Based on an interview with an incarcerated informant, a drug task force investigator submitted an affidavit to a magistrate judge as the basis for a search warrant. The relevant part of the investigator's affidavit offers details about drug sales Comer made to the informant at Comer's home.

> On December 1st, 2011, your affiant conducted an interview with [an informant[1]], who was incarcerated in the Beckham County Jail on a warrant. During the interview, [Informant] told you [sic] affiant that Jimmy Comer was a large dealer of Methamphetamine in Elk City Oklahoma. [Informant] said he was at the residence of Comer on 11-30-2011 between 3 pm and 4 pm and [Informant] purchased 3.5 grams of Methamphetamine from Comer for $300.00. [Informant] said Comer had approximately a half pound of methamphetamine at that time. [Informant] said Comer lives at the End of South Boone Street in Elk City in a two story house. [Informant] said Comer lives at the residence with Comer's father. [Informant] said he has purchased methamphetamine approximately 75 times in the past 6 months from Comer at Comer's residence. [Informant] said in the past he would purchase between 3.5 grams (8 ball) and 7 grams (a quarter ounce) of Methamphetamine from Comer. [Informant] said Comer had a police scanner in his residence. [Informant] said Comer's back door of the residence is barricaded with a pipe across the door. [Informant] said Comer attempted to put up surveillance cameras at the residence but Comer messed the cameras up.

---

[1] We have omitted the name of the informant.

> After completing the interview with [Informant], Your affiant conducted a criminal history records check on Comer. During the review of the Criminal record check, your affiant found that Comer has the following Criminal History. [Lists three felony convictions, one of which was manufacturing controlled dangerous substances.]
>
> During the investigation, your affiant conducted a records check of police reports from the Elk City Police Department and during this check, your affiant found a report filed by Comer in which Comer listed [an address at the end of South Boone Street] as his address.

App. 46–47. The magistrate judge issued the warrant.

The next day, drug task force investigators, including the affiant investigator, conducted the search and found methamphetamine, a recipe for methamphetamine, and a pistol. Based on this evidence, Comer was charged with possession with intent to distribute methamphetamine and possession of a firearm in furtherance of a drug trafficking crime.

Comer filed two pretrial motions to suppress evidence found during the search. The district court denied both motions. A jury convicted Comer of possession with intent to distribute methamphetamine, and the court sentenced him to 151 months in prison and eight years of supervised release.

Comer now appeals the district court's rulings on his motions to suppress.

## II. Analysis

Comer argues the affidavit does not support a finding of probable cause. We need not determine, however, whether the magistrate judge erred in finding

probable cause. Instead, we affirm the district court's denial of Comer's motion to suppress on the basis of the good faith rule established in *United States v. Leon*. 468 U.S. 897, 914 (1984).

When "the search warrant was not supported by probable cause, the evidence seized at [the suspect's] residence need not be suppressed if the executing officer acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000) (discussing *Leon*). Further, *Leon* creates a presumption "that when an officer relies upon a warrant, the officer is acting in good faith." *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985).

A defendant can overcome that presumption in any one of four situations: 1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; 2) when "the issuing magistrate wholly abandoned his judicial role"; 3) when an officer relies "on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and 4) when a warrant is "so facially deficient— *i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923 (citations and internal quotation marks omitted).

Comer argues that he can overcome the presumption of good faith based on the first and third exceptions set forth in *Leon*. He contends the investigator intentionally or recklessly withheld material information about the informant's criminal history, and that the officers executing the warrant could not have reasonably believed the warrant was supported by probable cause.

### A. Omission of Criminal History

Comer first argues that the investigator misled the magistrate judge by failing to include relevant information about the informant's criminal history. That history included convictions for driving under the influence and while intoxicated, drug possession, several hunting violations, and forging a check. He was suspected of, but not prosecuted for, several other crimes, and he had violated his parole on three occasions. At the time he spoke with the investigator, the informant was incarcerated on a warrant for failing to pay child support. Comer contends this fatally undercuts the reliability of the informant sufficient to cast doubt on all of the information supplied to the investigator.

"[I]f a defendant establishes that a police officer made false statements in an affidavit supporting a search warrant knowingly or with reckless disregard for the truth, and that the false statement was necessary to the finding of probable cause, the evidence seized during the resultant search must be excluded." *United States v. Tuter*, 240 F.3d 1292, 1299 (10th Cir. 2001). Omissions as well as affirmative misstatements can support a conclusion the officer knowingly or

recklessly misled the magistrate judge. *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir. 1990). Thus, establishing that an omission satisfies the first *Leon* exception has two elements; we must find 1) the officer knowingly or recklessly omitted the information at issue, and 2) the information, if included, would have defeated probable cause. *See United States v. Andrews*, 577 F.3d 231, 238–39 (4th Cir. 2009).

The record does not support such a finding. Regarding the first element, since Comer does not allege that the investigator actually knew the informant's history, Comer must establish that the investigator exhibited reckless disregard for the truth by his failure to discover and disclose it. "A reckless disregard for the truth exists when the affiant in fact entertained serious doubts as to the truth of his allegations, . . . and a factfinder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations." *DeLoach*, 922 F.2d at 622 (10th Cir. 1990). The defendant bears the burden to establish that the affiant entertained such serious doubts. *Bruning v. Pixler*, 949 F.2d 352, 357 (10th Cir. 1991). "Allegations of negligence or innocent mistake, however, are insufficient." *Tuter*, 240 F.3d at 1299. Instead, it is only when an officer's reliance was *wholly unwarranted* that good faith is absent. *Danhauer*, 229 F.3d at 1007. Thus, for example, an officer's good faith belief might be belied by a "bare bones affidavit, containing only conclusory statements and

-6-

completely devoid of factual support." *United States v. Rowland*, 145 F.3d 1194, 1207 (10th Cir. 1998).

Here, Comer argues based on the investigator's training that it would "make sense that he would run a background check on his informant." Aplt. Br. at 49. According to Comer, the investigator's failure to run a background check is reckless because the information the investigator would have found turned out to be highly material. But the materiality of the information the investigator would have found goes to the omission's effect on probable cause, not the good faith of the affiant.[2] Nor, as we explain below, can we presume, as Comer suggests we should, that a criminal history search is necessary in every case since the veracity and reliability of an informant's disclosures can be established or corroborated in a variety of ways. In these circumstances, Comer has failed to carry his burden that the investigator acted in reckless disregard of the truth by failing to run a background check.

---

[2] We have held that recklessness may be inferred when the information was "clearly critical" to a finding of probable cause. *DeLoach*, 922 F.2d at 622. But we have done so in cases where the affiant (or a police affiant's investigation teammates) had the omitted information at the time of writing the affidavit, as have the other courts that apply that standard. *E.g.*, *id.*; *Bruning*, 949 F.2d at 358; *Hale v. Fish*, 899 F.2d 390, 400 (5th Cir. 1990); *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986). Because the relevant inquiry is whether the affiant entertained serious doubts at the time of making his statements, the investigator's lack of knowledge of the informant's criminal history distinguishes this case from those in which we have inferred recklessness. In fact, adopting Comer's position would create an absolute requirement that every officer look up and likely include in his affidavit the criminal history of every imprisoned informant, and we decline to create that rule here.

Second, even if the investigator had included the informant's criminal history in the affidavit, we doubt it would defeat probable cause. To guide us in assessing probable cause, the Supreme Court instructs us to examine whether "the facts in the affidavit create a fair probability that contraband or evidence of a crime will be found in a particular place on consideration of the totality of circumstances." *United States v. Quezada-Enriquez*, 567 F.3d 1228, 1233 (10th Cir. 2009) (referring to *Illinois v. Gates*, 462 U.S. 213 (1983)). "We look for the kind of highly specific or personal details from which one could reasonably infer that the informant had firsthand knowledge about the claimed criminal activity." *Id.* (internal quotation marks omitted). As part of this inquiry, we consider the informant's "veracity, reliability, and basis of knowledge." *Id.*

Comer argues that, had the magistrate judge been aware of the informant's criminal history, it would have fatally undermined the credibility of the informant and the information he supplied. That overstates the case here. An informant's veracity turns on whether there is reason to believe that the informant is telling the truth and can be satisfied, among other ways, by "proof that the informant gave his information against his penal interest." *Gates*, 462 U.S. at 268 n.20. And "[w]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." *Quezada-Enriquez*, 567 F.3d at 1233 (citations and internal quotation marks omitted). "Reliability determinations entail inquiry into whether the informant

has provided accurate information in the past." *Id.* "Further, an informant's tip is more reliable if it is confirmed by officers' independent observations." *United States v. Hendrix*, 664 F.3d 1334, 1338 (10th Cir. 2011).

The criminal history information, while perhaps relevant, does not in this case sufficiently undermine reliability and veracity to warn a reasonable officer that the warrant lacked probable cause. First, when the magistrate judge made the initial assessment of veracity and reliability, she was aware that the informant was in jail on a warrant at the time he spoke with the investigator. The magistrate judge knew the informant was "not a model citizen" and possibly seeking to avoid prosecution for his own crimes. *United States v. Avery*, 295 F.3d 1158, 1168 (10th Cir. 2002). The informant told the investigator he was a frequent drug user and had recently purchased drugs from Comer numerous times. In that context, we have found that an informant's statements against his penal interest and the officer's, albeit minimal, corroboration of those statements are relevant. *See Gates*, 462 U.S. at 268 n.20. Information about the informant's criminal history would not substantially undermine the reasons we generally credit statements against penal interest or the investigator's corroboration.

To suggest that the informant's criminal history should have a more determinative effect on our probable cause analysis, Comer relies on a Ninth Circuit case concluding that an officer's failure to disclose his informant's convictions for making death threats to a wounded police officer and falsely

reporting a crime undermined probable cause. *United States v. Hall*, 113 F.3d 157, 158 (9th Cir. 1997). Comer argues that the informant's check forgery conviction should be given similar weight. But *Hall* is easily distinguished. Here, the informant's crime of dishonesty is far less relevant to findings of veracity and reliability than a history of lying "with the intent of implicating another in a crime." *Id.*

Finally, Comer does not even allege that the informant's criminal history would have unduly affected the magistrate judge's assessment of the informant's basis of knowledge. For the purposes of assessing "basis of knowledge, a firsthand observation is entitled to greater weight than secondhand information." *Quezada-Enriquez*, 567 F.3d at 1233. "An informant's tip which provides highly specific or personal details from which one could reasonably infer that the informant had firsthand knowledge about the claimed criminal activity is more likely to be found sufficient to support probable cause." *Hendrix*, 664 F.3d at 1338 (internal quotation marks omitted). In this case, the informant provided enough specific details to convince the magistrate judge, including that he had been to Comer's house to purchase drugs 75 times, knew Comer lived at the house with his father, and knew about distinct features of the exterior and the interior of the house. And the investigator confirmed Comer had felony drug convictions on his record. Additional information about the informant's criminal

background would not have materially undermined the reasons to credit his basis of knowledge.

As a result, the omission of the informant's criminal record does not materially change the magistrate judge's probable cause analysis, and is not alone a basis to reject *Leon's* good faith exception to the exclusionary rule.

### B. Unreasonable Reliance on the Affidavit

Comer also argues that the officer executing the warrant knew or should have known the affidavit was so lacking in indicia of probable cause as to render good faith reliance on the warrant unreasonable.

But, as explained above, when we consider all the information the investigator had at the time—including his failure to either discover or include the informant's criminal history—the affidavit was not so lacking in indicia of probable cause to justify suppressing the evidence. Although the affidavit could have offered more evidence to corroborate the informant's statements, the affidavit satisfied the magistrate judge, and we cannot say the officer's "reliance was [] *wholly unwarranted*" and thus cannot say good faith is absent. *Danhauer*, 229 F.3d at 1007.

We AFFIRM the judgment of the district court.

ENTERED FOR THE COURT,

Timothy M. Tymkovich
Circuit Judge